United States District Court
Southern District of Texas
**ENTERED**
March 18, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **GEOLINK LIMITED (U.K.),** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:21-CV-803** |
| | § | |
| **MAZHAR MAHMOOD,** *et. al.***,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court[1] are Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 33), Plaintiff's Opposed Motion to Amend First Amended Complaint (Dkt. No. 42), and Plaintiff's Opposed Motion to Supplement its Motion to Amend the First Amended Complaint (Dkt. No. 54). Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be **GRANTED** and the case be **DISMISSED WITH PREJUDICE**. The Court **FURTHER RECOMMENDS** that Plaintiff's Opposed Motion to Amend First Amended Complaint and Plaintiff's Opposed Motion to Supplement its Motion to Amend the First Amended Complaint be **DENIED**.[2]

## I.    BACKGROUND

This case involves a patent-ownership dispute. In summary, Geolink Limited ("Geolink"

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. (*See* Dkt. No. 18.)

[2] The Court **FURTHER RECOMMENDS** that Defendants' First Motion to Dismiss (Dkt. No. 22) and Defendants' Unsealed Motion to Dismiss (Dkt. No. 31) be **DENIED AS MOOT**.

or "Plaintiff") alleges that Defendants Prime Downhole Manufacturing, LLC ("Prime Manufacturing"), Prime Downhole Holdings, LLC ("Prime Holdings"), and Tensor Drilling Technologies ("Tensor") are wrongfully holding title to certain U.S. Patents and associated know-how that were previously sold to Geolink.[3] Geolink seeks a declaration as to the wrongful ownership and "damages against all defendants for torts committed in the course of wrongfully acquiring those patents and related know-how."[4]

Prime Manufacturing purchased the patents and intellectual property (the "Disputed Patents") at issue from Baker Hughes in 2019.[5] Plaintiff claims it previously purchased the Disputed Patents from Baker Hughes, formerly GE Oil & Gas, in 2016.[6] However, Plaintiff alleges that GE Oil & Gas/Baker Hughes breached its contract with Plaintiff by failing to provide the Disputed Patents and later selling them to Prime Manufacturing.[7]

a.  The Parties

Geolink, an electronic manufacturing company, brought suit against five Defendants: (1) Prime Holdings; (2) Prime Manufacturing; (3) Tensor; (4) Mazhar Mahmood; and (5) Post Oak Energy Capital L.P. ("Post Oak").[8] Prime Holdings is the parent company of Prime Manufacturing.[9] Prime Manufacturing, similar to Geolink, provides engineering and machining

---

[3] Dkt. No. 28-2 ¶ 1.

[4] *Id.* ¶ 1.

[5] *Id.* ¶ 42.

[6] *Id.* ¶¶ 15, 17.

[7] *Id.* ¶¶ 28, 31. The Court notes that Baker Hughes is not a party to this case. In a status hearing held on February 28, 2022, Plaintiff stated it is currently participating in an international arbitration dispute regarding separate claims it has brought against Baker Hughes. (*See* Dkt. No. 67.)

[8] Dkt. No. 28-2 ¶¶ 6-12.

[9] *Id.* ¶ 8.

services to the oil and gas industry.[10] Tensor manufactures and sells drilling measurement systems.[11] As a result of Prime Manufacturing acquiring a Tensor line of products from Baker Hughes in 2019, Tensor is now owned and operated by Prime Manufacturing.[12] Thus, both Geolink and Prime Manufacturing d/b/a Tensor manufacture and sell drilling measurement systems.[13] Mahmood is currently the President of Tensor, but previously worked as a Product Line Leader for drilling measurement systems at GE Oil & Gas/Baker Hughes.[14] Post Oak, a private equity firm, previously made a $50 million equity commitment to Prime Holdings.[15]

   b.   Factual Background

   Before 2016, GE Oil & Gas owned the intellectual property for two different drilling measurement systems marketed under the names "Geolink" and "Tensor."[16] In 2016, GE Oil & Gas sold the intellectual property for the Geolink product line to Lynx Drilling Tools ("Lynx").[17] On December 29, 2016, Lynx entered into an Intellectual Property Purchase Agreement with Sondex Wireline Limited, an entity within the GE Oil & Gas group of companies acting for itself and other GE Oil & Gas entities, for the purchase of all of the intellectual property associated with the Geolink product line (the "IPPA").[18] Plaintiff alleges the IPPA included 54 patents along with all associated know-how.[19] Lynx did not record its claimed interest in the patents with the United

---

[10] *Id.* ¶ 9.
[11] *Id.* ¶ 10.
[12] *Id.* ¶¶ 7, 10.
[13] *Id.* ¶¶ 6, 10.
[14] *Id.* ¶ 7.
[15] *Id.* ¶ 12.
[16] *Id.* ¶ 13.
[17] *Id.* ¶ 15.
[18] *Id.* ¶ 15.
[19] *Id.* ¶ 17. Thirty of these patents were later purportedly sold and assigned to Prime Manufacturing, which are now at issue in this lawsuit. (*Id.* ¶ 42.)

States Patent and Trademark Office ("PTO") as required under 35 U.S.C. § 261.

The owner of Lynx and another individual formed Geolink in 2017, and Lynx's rights and obligations under the IPPA were subsequently transferred to Geolink.[20] Geolink did not record its claimed interest in the patents with the PTO at this time. Following the transfer to Geolink, GE Oil & Gas allegedly breached the IPPA by failing to transfer the patents and know-how that Plaintiff claims are covered under the IPPA.[21] Baker Hughes, which merged with GE Oil & Gas in mid-2017, also allegedly failed to perform under the IPPA.[22]

Plaintiff states the acquisition was "well known in the energy sector," describing an industry wide announcement and "heavy marketing" of the Geolink product line to the international energy industry.[23]

In January 2019, Plaintiff alleges Post Oak "made a $50 million equity commitment to [Prime Holdings]" in order to partially "finance [Prime Manufacturing]'s acquisition and development of the Tensor product line."[24]

In March 2019, Baker Hughes sold the Tensor product line to Prime Manufacturing pursuant to an Asset Purchase Agreement (the "APA").[25] Plaintiff alleges Mahmood, who worked for Baker Hughes at the time, was involved in Baker Hughes's decision to divest the Tensor product line to Prime Manufacturing.[26] Baker Hughes transferred 106 patents to Prime Manufacturing as

---

[20] *Id.* ¶ 19.
[21] *Id.* ¶ 28.
[22] *Id.* ¶ 31.
[23] *Id.* ¶¶ 18, 20-23.
[24] *Id.* ¶ 37.
[25] *Id.* ¶ 42.
[26] *Id.* ¶ 43.

well as the related know-how.[27] These 106 patents included the 30 Disputed Patents.[28] After Plaintiff raised its concerns to Prime Manufacturing, sixteen Disputed Patents were assigned to Geolink.[29] Prime Manufacturing retains the other fourteen Disputed Patents.[30]

In May 2019, Mahmood left Baker Hughes and joined Prime Manufacturing, as did other Baker Hughes employees.[31]

In September 2019, Geolink attempted to record three Disputed Patents with the PTO for the first time.[32]

## II.    LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor

---

[27] *Id.* ¶ 42.

[28] *Id.* ¶ 42.

[29] *Id.* ¶ 31.

[30] *Id.* ¶ 31. For clarity, Plaintiff also refers to the fourteen Disputed Patents as the "CPR Patents."

[31] *Id.* ¶ 43.

[32] *Id.* ¶ 44.

of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "However, a court may also consider documents outside of the pleadings if they fall within certain limited categories." *Doe v. Siddiqui*, No. 3:17-CV-01869, 2018 WL 3956292, at *2 (N.D. Tex. Aug. 17, 2018). First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan*, 600 F.3d at 546 (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

## III.   ANALYSIS

### a.   Tortious Interference with Contract Claims

Defendants argue Plaintiff's tortious interference with contract claims against Prime Manufacturing, Prime Holdings, and Post Oak (collectively, the "Corporate Defendants") should be dismissed because (1) Plaintiff fails to allege the Corporate Defendants interfered with the IPPA subject matter; (2) Plaintiff fails to allege the Corporate Defendants had knowledge of the IPPA or its terms to establish intent; (3) Plaintiff fails to allege the Corporate Defendants knowingly induced or persuaded anyone to breach the IPPA; and (4) Plaintiff admits Mahmood was not a

stranger to the contract alleged to be interfered with.[33] In response, Plaintiff contends that (1) it has an interest in the CPR Patents; (2) it has sufficiently alleged Prime Manufacturing and Post Oak's knowledge of the IPPA; (3) the Corporate Defendants' actions were knowing or intentional; and (4) Mahmood's interference with the contract is ongoing.[34]

To prevail on a claim of tortious interference with a contract, a plaintiff must establish "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 353 (5th Cir. 2021) (quoting *Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)).

###### i.  Subject Matter of the IPPA

Defendants argue Plaintiff fails to allege that Defendants interfered with the subject matter of the IPPA.[35] Stated another way, Defendants' position is that they could not have interfered with a contract that did not convey the specific rights that Plaintiff is ultimately arguing were interfered with, *i.e.* the Disputed Patents.[36] The Court agrees with Defendants.

Relying on *El Paso Healthcare Systems, Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017), the Fifth Circuit's "review of Texas law indicates that to prevail on a [tortious interference with a contract] claim, the plaintiff must present evidence that some obligatory provision of a contract [was] breached." *Wickfire*, 989 F.3d at 354. "Although both *Wickfire* and *Murphy* address the sufficiency of evidence at trial, they provide convincing authority that Texas law requires a

---

[33] *See* Dkt. No. 33 at 13–19.
[34] *See* Dkt. No. 35 at 11–16.
[35] Dkt. No. 33 at 13–14.
[36] *Id.*

plaintiff to allege (at the pleading stage) that defendant's conduct caused a breach of an obligatory provision of a contract to plausibly allege a tortious interference with an existing contract claim." *ReSea Project ApS v. Restoring Integrity to the Oceans, Inc.*, No. SA-21-CV-1132, 2022 WL 565605, at *2 (W.D. Tex. Feb. 23, 2022). Therefore, to maintain a tortious interference with a contract claim, Plaintiff must allege Defendants' conduct caused a co-contracting party to breach an obligatory term or provision of the IPPA, and thus interfered with Plaintiff's legal rights under the contract. *See id.*

As noted by Defendants, Plaintiff acknowledges that the IPPA does not expressly transfer the Disputed Patents and contends that the Disputed Patents were purchased as "know-how."[37] Plaintiff states "Know-How" includes "know-how, technology, trade secrets, and proprietary information listed on Schedule 2," but it is unclear whether Schedule 2 exists as it was never delivered.[38] Plaintiff also points to communications outside the IPPA to further show that it has alleged an interest in the Disputed Patents.[39] However, the Court finds these facts fail to allege that the *IPPA* conveyed a legal right regarding the Disputed Patents and know-how to Plaintiff. *See WickFire*, 989 F.3d at 356 (noting that to induce a breach of contract would thus interfere with someone's legal rights under a contract) (citing *Murphy*, 518 S.W.3d at 422)).

  *ii.   The Corporate Defendants*

    1.   <u>Knowledge of the IPPA or its Terms</u>

Defendants also argue Plaintiff fails to allege that the Corporate Defendants had actual

---

[37] Dkt. No. 35 at 11.
[38] *Id.*; *see* Dkt. No. 40 ¶ 20; Dkt. No. 33-1 at 18.
[39] Dkt. No. 35 at 11.

knowledge of the IPPA or its terms to establish intent.[40] The Court agrees.

To show willful and intentional interference, the Corporate Defendants "must have 'actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Steinmetz & Associates, Inc. v. Crow*, 700 S.W.2d 276, 277–78 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).

Here, Plaintiff has not alleged sufficient facts to support the willful and intentional interference element. The crux of Plaintiff's knowledge argument is that the acquisition was "general knowledge within the energy industry."[41] In the First Amended Complaint, Plaintiff states an announcement regarding the acquisition was "widely disseminated to Geolink's customers . . . and the energy industry at large" by GE Oil and Gas.[42] Plaintiff does not state that the announcement was received by the Corporate Defendants. Moreover, it is not alleged that the announcement specifically identified the Disputed Patents or related know-how at issue here. Further, the First Amended Complaint describes Geolink's various marketing tactics: informational brochures, promotion at industry conferences, and the Geolink website.[43] However, the First Amended Complaint is silent as to how any of these marketing materials or presentations were received by the Corporate Defendants. Plaintiff argues that it is reasonable to infer that the Corporate Defendants, as "veterans of the industry," knew of the IPPA and its terms based solely

---

[40] Dkt. No. 33 at 15.
[41] Dkt. No. 28-2 ¶ 18.
[42] *Id.* ¶ 18.
[43] *Id.* ¶¶ 20-22.

on the fact that the "industry is close-knit."[44] Plaintiff's arguments are unpersuasive.

The First Amended Complaint names a number of individuals to show that "Geolink's acquisitions of the relevant patents and know-how was spread by word of mouth through the industry and to individuals who currently work for Tensor."[45] However, as Defendants argue, the First Amended Complaint does not allege these individuals were employees of Prime Manufacturing at the time of transfer to Prime Manufacturing and, thus, could not have interfered with contract that occurred before they joined Prime Manufacturing.[46] The First Amended Complaint also alleges Steven Krase, a former Prime Manufacturing employee, was aware that the CPR technology was not part of Tensor's technology, but does not allege he knew that the CPR technology had allegedly been transferred to Geolink.[47]

Plaintiff argues that Corporate Defendants "had access to [Baker Hughes] personnel and records" and the [APA], which included the Disputed Patents, indicated that Baker Hughes lacked a "complete chain of title" for some patents.[48] However, Plaintiff does not allege Baker Hughes informed Prime Manufacturing of the IPPA or that the records referred to the IPPA.[49] Instead, Plaintiff maintains that "[t]he most basic due diligence of publicly available information would have revealed the IPPA. . . ."[50] Defendants argue, and the Court agrees, that Plaintiff fails to explain how due diligence would have revealed the IPPA and its terms.[51] This is particularly notable when

---

[44] Dkt. No. 35 at 13.
[45] Dkt. No. 28-2 ¶ 23.
[46] *See* Dkt. No. 33 at 16.
[47] Dkt. No. 28-2 ¶ 26.
[48] Dkt. No. 35 at 13.
[49] *See* Dkt. No. 38 at 7–8.
[50] Dkt. No. 35 at 14.
[51] *See* Dkt. No. 38 at 7.

considering that Plaintiff did not attempt to record an interest in any of the Disputed Patents prior to September 2019.[52] Thus, Plaintiff fails to explain how a search by the Corporate Defendants would have revealed Plaintiff's unrecorded claimed interest.

Plaintiff cites *Randall v. L-3 Commc'ns Corp.*, No. 3:16-CV-3000, 2017 WL 2189432 (N.D. Tex. May 18, 2017) for support.[53] *Randall* involved an ongoing employment relationship, part of which included a prior incident where the defendant's actions directly affected the plaintiff's ability to work. *Id.* at *2–3. Thus, the Court found it was plausible to infer that the defendant had "knowledge of [the] facts and circumstances" at issue that ultimately affected the plaintiff's ability to work again. *Id. Randall* is distinguishable from the instant case because Plaintiff does not allege a similar type of connection between Plaintiff and the Corporate Defendants as seen in *Randall*. *See id.* at *2 ("The complaint avers that Ivey had dealings with Randall at work in 2012 . . . 'had come back into the picture of Plaintiff's work environment' in 2015, and 'had Plaintiff removed as Information Assurance Manager' in May of 2015."). Accordingly, the Court cannot plausibly infer that the Corporate Defendants willfully and intentionally interfered with the IPPA because Plaintiff's First Amended Complaint fails to show that, through general industry knowledge, the Corporate Defendants had "knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Amigo Broadcasting*, LP, 521 F.3d at 490 (quoting *Steinmetz*, 700 S.W.2d at 277–78)); *see also Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 396 (5th Cir. 2013) ("[T]he intent element turns on whether the alleged tortfeasor had or should have had knowledge . . . .").

---

[52] *See* Dkt. No. 35 at 15.
[53] *Id.* at 12.

11 / 26

An argument similar to Plaintiff's can be seen in *Wolf v. Cowgirl Tuff Co.*, where the plaintiffs cited defendant's "experience and knowledge in the niche area of rodeo competition industry" to claim the defendant had knowledge of the photos at issue in the case. *See* No. 1:15-CV-1195, 2016 WL 4597638, at *4 (W.D. Tex. Sept. 2, 2016). However, in contrast to the instant case, the plaintiffs relied on more than generalized industry knowledge. The plaintiffs in *Wolf* also based their allegations on the defendant's independent relationship with Equibrand, a company that the plaintiffs did business with. *Id.* at *2, 4. The defendant directly interacted with Equibrand, understood the connection between plaintiffs and Equibrand, and encouraged Equibrand to end its working relationship with plaintiffs. *Id.* at *4.  As a result, the Court found the plaintiffs alleged sufficient facts to allow for the reasonable inference that the defendant knew of or reasonably should have believed in the existence of the contacts in question. *Id.* The same cannot be said here. *See also Loco Brands, LLC v. Butler Am., LLC*, No. 6:18-CV-69, 2019 WL 3015046, at *4 (E.D. Tex. Jan. 28, 2019), *report and recommendation adopted*, No. 6:18-CV-69, 2019 WL 2281252 (E.D. Tex. May 29, 2019) (finding plaintiff sufficiently pled a tortious interference with a contract claim where the complaint alleged two prior incidents where the defendant attempted to end the plaintiff's ongoing business relationships).

Without establishing that the Corporate Defendants willfully and intentionally interfered with the IPPA, Plaintiff has not sufficiently pled its tortious interference with a contract claim against them. Accordingly, the Court recommends granting Defendants' Motion to Dismiss with respect to this claim.

2.   Knowingly Induce or Persuade a Party to Breach the IPPA

Defendants also argue Plaintiff fails to allege the Corporate Defendants knowingly induced

or persuaded anyone to breach the IPPA.[54] Specifically, Defendants argue Plaintiff's allegation that Prime Manufacturing entered into a contract with Baker Hughes that included the sale of the Disputed Patents is not sufficient to establish an intentional action to harm.[55] Plaintiff relies again on its knowledge argument, stating that "[Prime Manufacturing]'s transactions with [Baker Hughes] and Post Oak's funding of this transaction constitute intentional interference because both defendants knew the consequences of their actions."[56]

As noted above, Plaintiff's knowledge argument fails. Moreover, "[m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach." *Amigo Broad.*, 521 F.3d at 493. "It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010) (citation omitted). Plaintiff makes no such allegation here. In fact, Plaintiff alleges GE Oil & Gas/Baker Hughes breached the IPPA long before the Corporate Defendants ever became involved in this dispute.[57] Thus, the Court finds that Plaintiff fails to allege that the Corporate Defendants desired to interfere with the IPPA or believed such interference was substantially certain to result from its actions. *See Loco Brands*, 2019 WL 3015046, at *11 (citing allegations that described a party taking an active part in interfering with a contract); *Wolf*, 2016 WL 4597638, at *4 (same).

---

[54] Dkt. No. 33 at 17.
[55] *Id.* at 17–18.
[56] Dkt. No. 35 at 15.
[57] *See* Dkt. No. 28-2 ¶¶ 28, 31.

###### iii.   *Mahmood*

Defendants argue Plaintiff's tortious interference claim against Mahmood also fails because Mahmood was not a stranger to the IPPA as he was an employee of GE Oil & Gas/Baker Hughes at all relevant times.[58] The Court agrees with Defendants.

In Texas, "a person must be a stranger to a contract to tortiously interfere with it." *Loco Brands*, 2019 WL 3015046, at *3 (quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 761 (Tex. 2006)). "Accordingly, agents of a party generally cannot be held liable for interfering with that party's contractual relationships unless the agent acts outside of the agency's scope." *Weatherford Int'l, LLC v. Binstock*, 452 F.Supp.3d 561, 575 (S.D. Tex. 2020) (citing *American Medical International, Inc. v. Giurintano*, 821 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1991, no writ)).

Plaintiff does not deny that Mahmood was not a stranger to the IPPA.[59] Therefore, to show that Mahmood acted outside of the agency's scope, Plaintiff must allege that Mahmood acted solely for his own benefit or that GE Oil & Gas/Baker Hughes complained about Mahmood's actions. *See Weatherford*, 452 F. Supp. 3d at 575. Plaintiff fails to do so. Instead, Plaintiff argues Mahmood's interference with the contract is ongoing because he is "undoubtedly involved in [Prime Manufacturing]'s current refusal to assign the 14 CPR Patents back to [Baker Hughes] so that they may be assigned to Geolink."[60] Plaintiff's argument fails. As Mahmood was not a stranger to the IPPA because he was an employee of GE Oil & Gas/Baker Hughes, Plaintiff fails to state a tortious interference with a contract claim against Mahmood. Accordingly, the Court recommends

---

[58] Dkt. No. 33 at 18.
[59] Dkt. No. 35 at 15–16.
[60] *Id.*

granting Defendants' Motion to Dismiss with respect to this claim.

  b. Tortious Interference with Prospective Business Relations Claims

Defendants also argue Plaintiff's tortious interference with prospective business relations claims should be dismissed because (1) Plaintiff fails to allege any prospective business relationships; (2) Plaintiff fails to allege any Defendant engaged in independently tortious acts; and (3) Plaintiff fails to allege any Defendant intended or knowingly induced any party not to enter into a business relationship with Plaintiff.[61] Conversely, Plaintiff contends it sufficiently (1) identified prospective business relationships; (2) identified an independent tortious act; and (3) alleged knowing and intentional interference.[62]

"To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Cooper v. Harvey*, No. 3:14-CV-4152, 2016 WL 4427481, at *10 (N.D. Tex. Aug. 21, 2016) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)) (citations omitted); *see also Sanger Ins. Agency v. HUB Int'l., Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015). "[A] plaintiff must prove that more than mere negotiations occurred." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*,

---

[61] Dkt. No. 33 at 19–22.
[62] Dkt. No. 35 at 16–18.

213 S.W.3d 469, 475 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). While "mere negotiations" are not enough, a pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Gallagher Benefit Servs., Inc.*, No. 11-CV-0685, 2012 WL 2870639, at *7 (S.D. Tex. July 11, 2012) (quoting *Richardson-Eagle*, 213 S.W.3d at 475)).

To start, because Plaintiff fails to sufficiently plead a tortious interference with a contract claim, it follows that its tortious interference with prospective business relations claim should also be dismissed as it was the only independent tort alleged by Plaintiff. *See Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015) ("Unlike tortious interference with an existing contract, tortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful conduct by the defendant.") Thus, Plaintiff cannot establish a claim for tortious interference with prospective business relations because it fails to allege independently tortious or unlawful conduct by the Defendants.

As to the remaining elements, Plaintiff alleges that it "had a reasonable probability of prospective contractual relations" by arguing that "Geolink's business with existing customers was steadily increasing for over a year" before "immediately decreas[ing] as a direct result of the APA."[63] However, Plaintiff expecting potential business does not establish a reasonable probability that Plaintiff would have entered into a business relationship with a third party. *See Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 WL 2729998, at *9 (N.D. Tex. June 26, 2017) (finding the court could not infer there was a

---

[63] *Id.* at 17.

reasonable probability of future business relationships from an allegation that "[t]here existed a reasonable probability [of] one or more potential customers" who would have entered into a contractual relationship); *see also M-I LLC*, 733 F. Supp. 2d at 776 (noting an expectation of a potential project does not plead a reasonable probability of a potential business relationship). Moreover, Plaintiff fails to establish the Defendants either acted with a conscious desire to prevent those potential relationships from occurring or knew an interference was certain or substantially certain to occur as a result of the conduct.

Plaintiff also argues "negotiations with its Middle Eastern Partner of Choice" could not be finalized.[64] Defendants contend Plaintiff's argument as to its bidding strategy and reference to "negotiations with its Middle Eastern Partner" are not sufficient, adding that Plaintiff never alleges Defendants were aware of these bids or negotiations.[65] More specifically, Defendants argue that they "must have known that Plaintiff intended to profit because it is a business" does not amount to "knowledge of particular business relations."[66] The Court agrees. Plaintiff's reliance on Defendants' industry knowledge does not equate to knowledge in the existence of Geolink's contracts and business relationships. *See Greater Houston Transp.*, 2015 WL 1034254, at *18 ("Knowledge of Plaintiffs' business and of the existence of individual drivers does not demonstrate knowledge of individual contracts.")

Accordingly, the Court recommends granting Defendants' Motion to Dismiss with respect to this claim.

---

[64] *Id.*
[65] Dkt. No. 38 at 10–11.
[66] *Id.* at 11.

c.  Declaratory Relief

Defendants argue Plaintiff's action for declaratory relief should be dismissed because Plaintiff fails to allege an interest in the fourteen Disputed Patents.[67] Plaintiff contends that the patents were sold to Geolink as "know-how" and that Prime Manufacturing is not a bona fide purchaser for value because Prime Manufacturing knew about Geolink's interest in the Disputed Patents.[68]

Plaintiff alleges it has an interest in the fourteen Disputed Patents because it was assigned those patents in the IPPA.[69] However, as explained above, the Court agrees with Defendants that Plaintiff fails to allege that the IPPA conveyed a legal right regarding the fourteen Disputed Patents and know-how. Therefore, Plaintiff fails to allege any interest in these patents.

Moreover, under 35 U.S.C. § 261, "an assignment, grant or conveyance [of a patent] shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage." As discussed above, Plaintiff did not record the Disputed Patents with the PTO following the IPPA or when sixteen Disputed Patents were transferred to Plaintiff.[70] Nor did Plaintiff record the Disputed Patents with the PTO prior to Prime Manufacturing's purchase in March 2019.[71] Geolink attempted to record three Disputed

---

[67] Dkt. No. 33 at 22–25. Defendants also argue Plaintiff's action for declaratory relief should be dismissed because no controversy exists as to the first sixteen Disputed Patents. (*Id.* at 22.) Plaintiff agrees the issue is moot as to the first sixteen Disputed Patents. (Dkt. No. 35 at 19.)

[68] *Id.*

[69] *Id.* at 18–19.

[70] *See id.* at 7, 15.

[71] *Id.* at 15.

Patents for the first time in September 2019.[72]

Even though it never recorded its claimed interest in the Disputed Patents with the PTO, Plaintiff argues that the Corporate Defendants "would have known" of Plaintiff's failure to record.[73] In addition to Plaintiff's insufficient generalized knowledge argument, Plaintiff fails to explain how a search by the Corporate Defendants would have revealed Plaintiff's claimed interest if Plaintiff failed to ever record it.[74] Because Plaintiff fails to allege Defendants had actual or inquiry knowledge of Plaintiff's alleged interest in the Disputed Patents, Plaintiff likewise fails to allege that Prime Manufacturing was not a bona fide purchaser for value.

Accordingly, the Court recommends Plaintiff's declaratory relief claims be dismissed.

d.  Unjust Enrichment Claims

Defendants argue Plaintiff's unjust enrichment claims should be dismissed because Plaintiff fails to allege "fraud, duress, or the taking of an undue advantage" or any facts to demonstrate that any Defendant other than Prime Manufacturing benefitted.[75] Plaintiff contends it alleged the taking of an undue advantage and that Post Oak and Mahmood received a benefit.[76]

"Unjust enrichment allows recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Perales v. Bank of Am., N.A.*, No. CIV.A. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for

---

[72] Dkt. No. 28-2 ¶ 44.
[73] Dkt. No. 35 at 15.
[74] *See id.*
[75] Dkt. No. 33 at 25–26.
[76] Dkt. No. 35 at 19–20.

an unfortunate loss to the claimant." *Juan Antonio Sanchez, PC v. Bank of S. Texas*, 494 F.Supp.3d 421, 441 (S.D. Tex. 2020) (quoting *Heldenfels Bros.*, 832 S.W.2d at 42)).

Plaintiff's argument that Defendants took an undue advantage is predicated on its generalized knowledge argument, stating that Defendants knew Geolink had purchased title to the Disputed Patents and that Prime Manufacturing's subsequent purchase would jeopardize Geolink's ownership.[77] As explained above, Plaintiff's knowledge argument is insufficient. Further, Prime Manufacturing's retention over the Disputed Patents does not present an affront to a "sense of justice, decency, or reasonableness." *See Sanchez*, 494 F. Supp. 3d at 441 (internal quotation and citation omitted). Nor does Plaintiff's allegation that, based "[u]pon information and belief, Post Oak has discouraged Prime Manufacturing from reassigning the 14 patents back to Baker Hughes."[78]

As to Mahmood, Plaintiff argues he benefited because Mahmood knew he would receive employment at Tensor if the APA transaction was successful.[79] Defendants contend this argument is without merit because Mahmood's position at Tensor was not obtained from Plaintiff.[80] The Court agrees. *See Nguyen v. Watts*, 605 S.W.3d 761, 789 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) ("[A] plaintiff seeking restitution from an unjustly enriched defendant must show that she is the source of the alleged improper benefit rather than having only a remote or attenuated connection to it.").

Accordingly, the Court recommends Plaintiff's unjust enrichment claims be dismissed.

---

[77] *Id.*
[78] Dkt. No. 28-2 ¶ 32.
[79] Dkt. No. 35 at 20.
[80] Dkt. No. 38 at 12.

e.  Common Law Unfair Competition Claims

Defendants argue Plaintiff's common law unfair competition claims should be dismissed because Plaintiff failed to allege any independent tortious conduct.[81] The Court agrees with Defendants. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) ("Without some finding of an independent substantive tort or other illegal conduct, . . . liability cannot be premised on the tort of 'unfair competition.'"). As explained above, because the Court recommends dismissing Plaintiff's tortious interference claims and unjust enrichment claims, the Court further recommends dismissing Plaintiff's unfair competition claims.

f.  Prime Holdings and Post Oak

Lastly, Defendants argue Plaintiff's claims against Prime Holdings and Post Oak should be dismissed because Plaintiff alleges no facts to support any elements of the claims against them.[82] Plaintiff agrees that Prime Holdings should be dismissed without prejudice.[83] However, Plaintiff maintains it has sufficiently pled tortious interference with a contract, tortious interference with prospective business relationships, and unjust enrichment against Post Oak.[84]

In the First Amended Complaint, Plaintiff alleged that Post Oak conducted due diligence prior to its $50 million equity commitment, which Plaintiff believes financed Prime Manufacturing's purchase, and that, "[u]pon information and belief, Post Oak has discouraged [Prime Manufacturing] from reassigning the 14 patents back to Baker Hughes."[85] As the Court has explained, Plaintiff's generalized knowledge arguments are insufficient.

---

[81] Dkt. No. 33 at 25.
[82] *Id.* at 26–28.
[83] Dkt. No. 35 at 20.
[84] *Id.*
[85] Dkt. No. 28-2 ¶ 32, 37.

Accordingly, the Court recommends that Plaintiff's tortious interference with contract, tortious interference with prospective business relationships, and unjust enrichment claims against Post Oak be dismissed.

### g.  Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure directs courts to "freely give leave [to amend the pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). In fact, "district courts in the Fifth Circuit 'must entertain a presumption in favor of granting parties leave to amend.'" *In re BP P.L.C. Sec. Litig.*, No. 10-CV-4214, 2017 WL 914995, at *2 (S.D. Tex. Mar. 8, 2017) (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004)). Leave to amend is not automatic, however, and courts have discretion to deny leave in the face of undue delay, bad faith, prejudice, and futility of amendment, among other reasons. *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 391 (5th Cir. 2005). "[I]t is [also] appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *see also Lumpkins v. Office of Cmty. Dev.*, 621 F. App'x 264, 271 (5th Cir. 2015) (noting courts consider "judicial economy and effective case management" in deciding whether to grant leave to amend).

Plaintiff stated in its Response that, in the event the Court grants Defendants' Motion to Dismiss, Plaintiff "seeks leave to amend FAC to include the additional facts that were unavailable to Geolink when the FAC was filed, as well as to include a declaratory judgment claim as to know-how that Geolink recently learned was wrongfully sold to Prime Manufacturing under the APA."[86]

---

[86] Dkt. No. 35 at 21. Plaintiff also originally stated that it sought leave to amend to add a claim of civil conspiracy against Mahmood. (*Id.*) However, Plaintiff made no mention of it in its Opposed Motion to Amend First Amended Complaint. (*See* Dkt. No. 42.)

Plaintiff ultimately included these facts in its Response to Defendants' Motion to Dismiss "so that the Court could determine whether the proposed amendments would cure the deficiencies."[87] Both sides make it clear that they would like to avoid a third round of motion to dismiss briefing should the Court allow Plaintiff to amend and moot Defendants' second Motion to Dismiss.[88]

On August 6, 2021, prior to the deadline to amend pleadings, Plaintiff filed an Opposed Motion to Amend First Amended Complaint.[89] As noted above, the facts regarding the proposed amendments were included in Plaintiff's Response to Defendants' Motion to Dismiss.[90] However, as discussed in this Memorandum and Recommendation, Plaintiff fails to plead its various claims against Defendants even with consideration of Plaintiff's proposed amendments. Thus, Plaintiff's proposed amendments would be futile, and the Court recommends denying Plaintiff's Opposed Motion to Amend First Amended Complaint.

Additionally, on December 17, 2021, Plaintiff filed an Opposed Motion to Supplement its Motion to Amend the First Amended Complaint.[91] Plaintiff requested that it supplement its Motion to Amend with facts from five emails found in Prime Manufacturing's latest production and that the Court consider these facts in deciding Defendants' Motion to Dismiss.[92]

Defendants argue that the Court indicated, and the parties agreed, that briefing was closed on the Motion to Dismiss during a discovery hearing on September 9, 2021.[93] While Defendants

---

[87] Dkt. No. 49 at 2.
[88] *See id.*; Dkt. No. 44 at 6.
[89] *See* Dkt. No. 42.
[90] *Id.* at 1–2.
[91] *See* Dkt. No. 54.
[92] *Id.* at 3.
[93] Dkt. No. 58 at 5.

contend that Plaintiff's Motion to Supplement is nothing more than another Motion to Amend, they also argue that the emails fail to cure the deficiencies in Plaintiff's previous complaints.[94] The Court agrees.

These five emails provide nothing new. Plaintiff argues the first set of emails evidence that Prime Manufacturing was advised to conduct due diligence, which "should have or did reveal that the CPR Patents were sold to Geolink under the IPPA."[95] In the First Amended Complaint, Plaintiff previously alleged "[Prime Manufacturing] and Post Oak are sophisticated parties who conducted due diligence" and that "[a]ny minimal due diligence would have revealed" Geolink's ownership.[96] In the proposed Second Amended Complaint, Plaintiff also alleged "[d]ue diligence should have and likely did reveal" Geolink's ownership.[97]

Plaintiff argues the second email evidences that Prime Manufacturing "should have had access to the relevant documents and information stored by [GE Oil & Gas/Baker Hughes], which would include the IPPA and its related documents."[98] In the proposed Second Amended Complaint, Plaintiff previously alleged "[Prime Manufacturing] had access to [Baker Hughes]'s personnel and records during this due diligence."[99]

Plaintiff argues the third email evidences that Prime Manufacturing was aware of the title issues with the intellectual property being sold under the APA, and that "[i]t is plausible to infer that these title issues refer to Geolink's intellectual property."[100] Similarly, Plaintiff argues the

---

[94] *Id.* at 6.
[95] Dkt. No. 54 at 4.
[96] Dkt. No. 28-2 ¶ 41.
[97] Dkt. No. 40 at 12.
[98] Dkt. No. 54 at 4.
[99] Dkt. No. 40 at 12.
[100] Dkt. No. 54 at 5.

fourth email thread evidences that "[GE Oil & Gas/Baker Hughes] acknowledged there were 'open issues' with respect to those five CPR Patents, and that they would 'continue looking for the missing link in the chain.'"[101] In the proposed Second Amended Complaint, Plaintiff previously stated that "the APA explicitly states that there are chain of title issues with some of the CPR Patents."[102]

These four sets of emails add nothing more to Plaintiff's previous complaints. As such, the addition of these facts would not change the Court's decision. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (finding no abuse of discretion where the evidence would not have changed the district court's decision).

Lastly, as to the fifth email, Plaintiff argues it "shows that [Prime Manufacturing] acquired Geolink intellectual property through a forged document signed by an individual that has never been a director of the Plaintiff."[103] Defendants argue, and the Court agrees, that it is unclear how this document relates to the arguments presented in the Motion to Dismiss.[104]

Accordingly, the Court recommends denying Plaintiff's Opposed Motion to Supplement its Motion to Amend the First Amended Complaint.

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be **GRANTED** and the case be **DISMISSED WITH PREJUDICE**. The Court **FURTHER RECOMMENDS** that Plaintiff's Opposed Motion to

---

[101] *Id.*
[102] Dkt. No. 40 at 12.
[103] Dkt. No. 54 at 5.
[104] *See* Dkt. No. 58 at 14.

Amend First Amended Complaint and Plaintiff's Opposed Motion to Supplement its Motion to Amend the First Amended Complaint be **DENIED**.[105]

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on March 18, 2022.

Sam S. Sheldon
United States Magistrate Judge

---

[105] The Court **FURTHER RECOMMENDS** that Defendants' First Motion to Dismiss (Dkt. No. 22) and Defendants' Unsealed Motion to Dismiss (Dkt. No. 31) be **DENIED AS MOOT**.